IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

OTIS J. HAMMONS, )
)
        Plaintiff, )
)
vs. ) Case No. CIV-09-381-D
)
THE CITY OF OKLAHOMA CITY, )
)
        Defendant. )

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 26], which is fully briefed and at issue.[1] Based on the case record, the parties' arguments and the governing law, the Court finds that the Motion should be granted in part and denied in part as set forth below.

**Background**

Plaintiff Otis J. Hammons is a former employee of Defendant City of Oklahoma City (the "City"). He brings suit under 42 U.S.C. § 1983 for alleged violations of his constitutional rights in the termination of his employment in the Water and Wastewater Utilities Department. Specifically, Plaintiff claims he was denied procedural due process and equal protection of laws when the City terminated his employment without a hearing. Plaintiff also brings a pendent state law claim that he was wrongfully discharged in violation of a public policy of the State of Oklahoma based on a medical condition when the City "knew or should have known that Plaintiff was subject to workers' compensation rights." *See* Compl. [Doc. 1], ¶ 24. The City seeks summary judgment in its favor pursuant to Fed. R. Civ. P. 56 on the grounds that Plaintiff cannot establish his due process or equal

---

[1] The Motion is supported by Defendant's opening and supplemental briefs [Doc. Nos. 26 and 43] and opposed by Plaintiff's response briefs [Doc. Nos. 31 and 46], all of which have been considered.

protection rights were violated. The City further contends that any common law claim is barred by Plaintiff's failure to comply with the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 *et seq.*, and that any statutory claim under workers' compensation laws, Okla. Stat. tit. 85, §§ 5-7, is barred by Plaintiff's inability to return to work. Finally, the City contends that Plaintiff may not recover punitive damages under any legal theory.

**Standard of Decision**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record."

*See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts**[2]

Plaintiff began his employment with the City in 1993 in the Parks and Recreation Department. From 1995 until 2005, Plaintiff was employed in the Line Maintenance Division of the Water and Wastewater Utilities Department as a mechanic. In 1998, Plaintiff suffered an on-the-job injury to his left knee while working as a mechanic; this injury required surgical treatment and resulted in a permanent partial disability award in a worker's compensation proceeding. Due to a second knee surgery in 2001 and medical restrictions ordered by his treatment providers, Plaintiff was unable to return to his position as a mechanic until August, 2002.

In August, 2003, Plaintiff suffered an on-the-job injury to his back. He underwent spine fusion surgery in 2004. On December 20, 2004, Plaintiff was released to return to work with permanent restrictions that prevented him from performing the duties of a mechanic. In February, 2005, Plaintiff was offered and accepted a voluntary reassignment to the position of communications dispatcher in the emergency dispatch section of the Line Maintenance Division. Although this was a demotion, it allowed Plaintiff to maintain employment with the City. In June, 2005, Plaintiff also received a permanent partial disability award for his back injury.

In November, 2006, Plaintiff requested and was granted a reduced work schedule under the Family and Medical Leave Act due to stress, based on a medical certification from Dr. Jeffery Cruzan, M.D. In January, 2007, Plaintiff's counselor, Anita Walker, L.P.C., L.M.F.T., notified the

---

[2] This statement includes facts presented by both parties that are supported by the record, but facts stated by the parties that are unsupported or immaterial to the issues addressed herein are disregarded. All facts are stated in the light most favorable to Plaintiff.

3

City that she had asked Plaintiff to stay away from work and that he should have no contact with a particular employee toward whom his anger was directed; the counselor stated that Plaintiff would be absent from work until Dr. Cruzan authorized his return.

In February, 2007, Plaintiff's counsel of record, Cynthia D'Antonio, contacted the City to discuss leave benefits. Ms. D'Antonio stated that she represented Plaintiff and requested that the City "forward all correspondence to her attention." *See* Greene Dep. 86:25-87:13. On February 26, 2007, Ms. D'Antonio submitted a written request on Plaintiff's behalf for a 30-day leave of absence, which was granted. On March 26, 2007, the City sent a written notice to Plaintiff, through counsel and by mail, stating his leave of absence expired on that date and instructing him to return to work on March 29, 2007. On March 28, 2007, the City received a statement from Dr. Cruzan that Plaintiff was "unable to return to work indefinitely" and his recommendation was "that [Plaintiff] not return to work." *See* Greene Dep. 88:4-11. On that same date, the City sent a second notice to Plaintiff, through counsel and by mail, stating it had received Dr. Cruzan's statement and Plaintiff would remain in leave-without-pay status until further notice.

On April 3, 2007, the City sent a written notice to Plaintiff, through counsel only, and to a representative of the local union of a "pre-determination meeting" to be held on April 9, 2007. *See* Pl.'s Resp. Br., Ex. 9 [Doc. No. 31-9]. The notice requested Plaintiff's attendance at the meeting, either in person or through a representative, and stated that the purpose of the meeting was to give Plaintiff an opportunity to present his side of the issues regarding Dr. Cruzan's statement that Plaintiff was unable to return to work. The notice stated that no decision concerning personnel action had been made and a decision would not be made until any information provided in the meeting was considered, but the notice advised that possible personnel action included "separation

4

from employment due to [Plaintiff's] inability to return to work." *Id*. The notice was not sent directly to Plaintiff, but he was notified of the meeting by his attorney.

Neither Plaintiff nor his attorney attended the April 9 meeting, and no documentation was submitted to refute Dr. Cruzan's statement. On that date, Plaintiff had a previously scheduled appointment with Dr. Cruzan. Ms. D'Antonio informed the City before the meeting that they would be unable to attend, and she requested that the meeting be rescheduled. However, the meeting was held in Plaintiff's absence. The City terminated Plaintiff's employment on April 10, 2007, based on Dr. Cruzan's statement.

As a municipal employee, Plaintiff was a member of a collective bargaining unit, the American Federation of State, County, and Municipal Employees, Local 2406, and his employment was subject to a collective bargaining agreement ("CBA"). The CBA in effect at the time of his termination provided for pre-determination meetings and post-discharge grievance procedures. Also, the City's personnel policies included grievance procedures that provided employees with an opportunity for a post-termination hearing before a grievance review board, which was authorized to receive testimony and evidence. Neither Plaintiff nor the union filed a grievance pursuant to the CBA or the personnel policies. However, Plaintiff's counsel sent a letter to the City complaining about the failure to reschedule the pre-determination meeting, and notifying the City of Plaintiff's claims of retaliatory discharge and insufficient pre-termination procedures. The parties dispute whether Plaintiff provided sufficient notice to comply with the Governmental Tort Claims Act and whether such notice was required.

During discovery in this case, Plaintiff's treatment providers were deposed. Dr. Cruzan testified that he has never released Plaintiff to return to work. Ms. Walker similarly testified that Plaintiff was never released to return to work while under her care. Further, after termination,

5

Plaintiff applied for, and is currently receiving, social security disability benefits. Plaintiff contends this information is irrelevant to the issue of whether he was unlawfully discharged in April, 2007. Defendant contends this evidence shows Plaintiff was unable to work and, thus, he was correctly discharged.

## Discussion

**A.     Procedural Due Process Claim**

Plaintiff's claim that the City denied him procedural due process requires proof that he had a constitutionally protected interest in his employment and that the City failed to follow constitutionally adequate procedures to terminate it. *See Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009); *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). For purposes of summary judgment, the City concedes that Plaintiff had a property interest in his continued employment. The City contends, however, that its pre-termination procedures satisfied constitutional standards, that Plaintiff failed to utilize the post-termination procedures available to him, and – in its supplemental brief – that an adversary hearing would have yielded the same result because the medical evidence shows Plaintiff was unable to return to work.

"An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation omitted). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* (citations omitted). A constitutionally adequate "pretermination hearing requires: (1) 'oral or written notice [to the employee] of the charges against him;' (2) 'an explanation of the employer's evidence and [3] an opportunity [for the employee] to present his side of the story.'" *Montgomery*, 365 F.3d at 936 (quoting *Loudermill*, 470 U.S. at 546);

*see also Riggins*, 572 F.3d at 1108. The court of appeals has explained these requirements as follows:

> We have upheld as sufficient to meet these requirements informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors, *see Seibert v. University of Oklahoma Health Sciences Center*, 867 F.2d 591, 598 (10th Cir.1989), and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination, *see Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir.1989). The objective of the process is "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *West* [*v. Grand County*], 967 F.2d [362,] at 367 [(10th Cir. 1992)] (citation omitted).

*Riggins*, 572 F.3d at 1108 (footnote omitted); *see also Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989) (quoting *Loudermill*, 470 U.S. at 545-46).

In this case, Plaintiff complains that the written notice of his possible termination was sent only to his attorney, and the City did not notify him directly. He notes that the CBA required notice to the employee and the City's personnel policies arguably required direct contact with the employee. However, it is undisputed that Plaintiff received actual notice of the scheduled pretermination meeting. Any noncompliance with the CBA or personnel procedures does not have constitutional significance. *See Riggins*, 572 F.3d at 1109 n.3; *see also Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 522 (10th Cir. 1998) (university's failure to follow its established guidelines "does not in and of itself implicate constitutional due process concerns") (internal quotation omitted). Further, the City's notice was plainly adequate to explain the evidence on which it proposed to make a personnel decision; the notice expressly referenced Dr. Cruzan's note and quoted pertinent portions of it.

The only real question is whether Plaintiff received an adequate opportunity before the termination decision was made to either refute the City's evidence or explain why his inability to

7

return to work should not result in termination. Plaintiff focuses on his and his attorney's scheduling conflict and the City's failure to reschedule the April 9 meeting. He also notes that the written notice invited the presentation of information at the meeting; it did not state that evidence could be submitted outside the context of the meeting. However, Plaintiff presents no facts or evidence concerning the nature of his attorney's conflict or Plaintiff's inability to attend the scheduled meeting. In his deposition, Plaintiff testified only that he did not want to go without his attorney. *See* Hammons Dep. 83:7-10. Dr. Cruzan testified that Plaintiff's medical appointment on April 9 could have been rescheduled if there was a conflict. *See* Cruzan Dep. 31:7-32:2.

On the record presented, the Court finds that Plaintiff cannot establish a violation of due process under the circumstances of this case. Plaintiff has failed to present any authority for the proposition that the City was required to reschedule the pre-determination meeting simply because Plaintiff's attorney asked for such an accommodation. While it may be regrettable that the City did not respond to the rescheduling request in a more timely fashion, the Constitution only requires an opportunity to be heard. The record does not establish that Plaintiff could not be present at the April 9 meeting; it shows only that he did not attend. An employee's failure to participate in a scheduled meeting does not amount to a violation of due process. *See Cepero-Rivera v. Fagundo*, 414 F.3d 124, 135 (1st Cir. 2005); *Krentz v. Robertson*, 228 F.3d 897, 903 (8th Cir. 2000).

Further, at the time of the meeting, Plaintiff was not actively working but, at his request, had been placed on leave-without-pay status. The pre-determination meeting scheduled by the City provided an additional opportunity for Plaintiff to address his ability to return to work and avoid a termination of his employment. The City provided the requisite "initial check" against a mistaken decision by giving notice and offering an opportunity for Plaintiff to provide additional information and to clarify Dr. Cruzan's statement that Plaintiff was unable to return to work. After Plaintiff was

8

notified of the termination decision, the City's grievance and review procedures were available for Plaintiff to challenge the propriety of the decision; he simply elected not to utilize them. Under these circumstances, the Court finds that the procedures employed by the City with respect to Plaintiff's termination were sufficient to satisfy due process.

For these reasons, the City is entitled to summary judgment on Plaintiff's procedural due process claim asserted as the First Cause of Action in the Complaint.

**B.     Equal Protection Claim**

In his Second Cause of Action, Plaintiff claims that his rights under the Equal Protection Clause were violated because he was denied a pre-termination hearing to which he was entitled as a municipal employee. Plaintiff alleges that because similarly situated employees facing possible termination were provided such hearings under similar circumstances, his lack of a hearing constituted an equal protection violation.

Plaintiff thus asserts what is referred to in case law as a "class of one" claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To establish such a claim, a plaintiff must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. There is uncertainty in this circuit whether a class-of-one plaintiff must also show the discriminatory treatment was motivated by some form of subjective malice, vindictiveness, or ill will, as well as being arbitrary and irrational. *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004); *see also Christian Heritage Academy v. Oklahoma Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1043 (10th Cir. 2007) (McConnell, J., concurring). However, the court's requirement of a strong showing is clear. A "multiplicity of relevant (nondiscriminatory) variables requires plaintiff to provide compelling

evidence of other similarly situated persons who were in fact treated differently." *Jennings*, 383 F.3d at 1215; *see Bruner v. Baker*, 506 F.3d 1021, 1029 (10th Cir. 2007).

Upon consideration of the summary judgment record, the Court finds that Plaintiff has not come forward with sufficient facts and evidence to establish a class-of-one claim under either formulation. He identifies only the testimony of his supervisor, Randy Harris, that Mr. Harris had witnessed the rescheduling of pre-termination hearings on other occasions. Based on this testimony, Plaintiff argues in his brief that other employees' hearings were rescheduled "routinely" or under comparable circumstances, such as when the City was advised of a scheduling conflict. *See* Pl.'s Resp. Br. [Doc. No. 31] at 8, 19. In so doing, Plaintiff overstates the record submitted in support of this assertion. According to the deposition transcript, Mr. Harris was simply asked: "Have you ever, in your 23 years, ever seen [a pre-determination hearing] that's been rescheduled?" *See* Harris dep. 42:22-23 (Ex. 2 to Pl.'s Resp. Br.). Mr. Harris answered, "Yes." *See id*. 42:24.

Accordingly, the Court finds that Plaintiff has failed to provide factual support for his position that he was treated differently from similarly situated employees without any rational basis. Even when the record is viewed most favorably to Plaintiff as required by Rule 56, no rational factfinder could find sufficient facts to establish a class-of-one equal protection claim.

Further, the Supreme Court recently ruled that a class-of-one equal protection theory "does not apply in the public employment context." *See Engquist v. Oregon Dep't of Agric.*, 553 U.S.591, 598 (2008). In so doing, the Supreme Court observed that it had "never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Id*. at 605. Following *Engquist*, the court of appeals has unequivocally rejected a class-of-one equal protection theory for public employees. *See Pignanelli v. Pueblo Sch. Dist. No. 60*, 540

F. 3d 1213, 1221-22 (10th Cir. 2008) (overruling *Bartell v. Aurora Pub. Sch.*, 263 F. 3d 1143, 1148-49 (10th Cir. 2001)); *see also Kelley v. City of Albuquerque*, 542 F.3d 802, 822 (10th Cir. 2008). Therefore, the Court finds that Defendant is entitled to summary judgment on the Second Cause of Action asserted in Plaintiff's Complaint.

## C. Pendent Wrongful Discharge Claim

Plaintiff asserts a Third Cause of Action under state law. The exact nature of this claim is unclear from the allegations of his Complaint and the arguments in his summary judgment briefs. He asserts that his termination violated Oklahoma public policy and statutes protecting the exercise of rights under the Workers Compensation Act. *See* Okla. Stat. tit. 85, §§ 5-7. The parties disagree whether this claim is subject to the Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-74, and whether it is barred by Plaintiff's physical incapacity to perform his job duties at the time of his termination. *See* Okla. Stat. tit. 85, § 15(C). A review of the legal authorities cited by the parties concerning these issues reveals a lack of clear, binding statement of Oklahoma law.

Upon consideration, the Court concludes in the exercise of discretion under 28 U.S.C. § 1367(c) that a federal court should decline to exercise supplemental jurisdiction over this claim. Because Defendant is entitled to summary judgment on Plaintiff's § 1983 claims, all claims within the Court's original subject matter jurisdiction have been adjudicated. Further, Plaintiff's pendent claim involves unresolved state law issues that are best decided by state courts.

The court of appeals has observed that "the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice." *See Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (noting a general rule of declining pendent jurisdiction when federal claims are resolved

11

before trial). However, concerning a district court's exercise of discretion, the court of appeals has stated:

> Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary. The district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.

*Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990); *see Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 541 (10th Cir. 1995).

Applying the factors identified in *Thatcher*, the Court finds dismissal is appropriate here. The Court is aware of the extent of pretrial efforts, which include the disclosure of witnesses and exhibits, the completion of discovery, and the filing of dispositive motions. However, no trial submissions have been made, nor have any substantial trial preparations been done. The case is not currently set on any trial docket. Under these circumstances, the Court finds Plaintiff's state law claim should be dismissed without prejudice to refiling in state court.

**Conclusion**

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's constitutional claims asserted under 42 U.S.C. § 1983 but that Plaintiff's state law claim should be dismissed.

IT IS THEREFORE ORDERED that Defendant City of Oklahoma City's Motion for Summary Judgment [Doc. No. 26] is GRANTED in part and DENIED in part. Defendant is entitled to summary judgment on Plaintiff's § 1983 claims. However, Plaintiff's state law claim is dismissed without prejudice to refiling in an appropriate forum.

IT IS SO ORDERED this  20th  day of April, 2011.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE